IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DARLENE WOODS,                              Civ. No. 6:13-00457-AA

       Plaintiff,                          OPINION AND ORDER

    v.

WELLS FARGO BANK, N.A.,

       Defendant.
_____

Tamara Powell
Albertazzi Law Firm
44 NW Irving
Bend, OR 97701
    Attorney for Plaintiff

Robert J. Bocko
Daniel J. Park
Keesal, Young, & Logan
1301 Fifth Avenue, Suite 3300
Seattle, Washington 98101
    Attorneys for Defendant

AIKEN, Chief Judge:

    Plaintiff Darlene Woods filed suit against Wells Fargo Bank,

1   -  OPINION AND ORDER

N.A. ("Wells Fargo"), alleging violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., and breach of contract. Plaintiff seeks damages, declaratory relief, and attorney fees. Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56 on all of plaintiff's claims, arguing that RESPA does not apply to plaintiff's loan and that plaintiff's RESPA and breach of contract claims fail as a matter of law. Plaintiff opposes defendant's motion.

Defendant's motion is granted as to the RESPA claims and denied as to the breach of contract claims.

### I. BACKGROUND

In 2006, plaintiff purchased property (the "property") in Bend, Oregon. Woods Dep. 47:4-6 (attached as Ex. A to Park Decl.). Plaintiff purchased the property for the use of House of Hope Ministries ("HOHM"), a nonprofit organization, Woods Dep. 47:13-17, and has never resided at the property. Id. at 61:5-14.

On March 28, 2007, plaintiff obtained an adjustable-rate refinance loan (the "loan") for the property from World Savings Bank, F.S.B. Woods Dep. Ex. 5 at 72-77. After plaintiff obtained the loan, World Savings Bank, F.S.B. changed its name to Wachovia Mortgage, F.S.B. Dolan Decl. ¶ 4. On November 1, 2009, Wachovia Mortgage converted to Wells Fargo Bank Southwest, N.A., which immediately merged into Wells Fargo. Dolan Decl. ¶ 5. Accordingly, defendant is the successor to World Savings with respect to

2   -  OPINION AND ORDER

plaintiff's loan. Park Decl. Ex. C at 8:9-18.

On October 21, 2010, plaintiff filed for bankruptcy in the United States Bankruptcy Court for the District of Oregon. Park Decl. Ex. J. In August 2011, plaintiff and defendant agreed to a stipulation (the "stipulation"), which modified some terms of the loan. Woods Compl. Ex. A. The stipulation was incorporated into plaintiff's Bankruptcy Plan. Park Decl. Ex. L. On August 29, 2011, the Bankruptcy Court issued an order confirming plaintiffs' Bankruptcy Plan, including the stipulation. Id.

Under the stipulation, plaintiff was required to make monthly principal and interest payments of $1533.03, beginning on September 1, 2011. Woods Compl. Ex. A at 3:10-13. The stipulation also required plaintiff to make monthly escrow payments for advances paid by defendant on property taxes and hazard insurance. Id. at 3:14-16. Plaintiff owed $2645.82 in taxes on the property for the 2011-2012 tax year ending on June 30, 2012. Woods Dep. Ex. 12 at 113. On October 26, 2011, defendant paid the property taxes and charged the amount to escrow. Id. at 115.

Defendant received plaintiff's first post-stipulation payment on October 5, 2011 for $1533.03. Dolan Decl. ¶ 11. Defendant claims that this payment was late and insufficient, as the first payment under the stipulation was due on September 1, 2011 in the amount of $1986.33, including the escrow payment. Id. at ¶ 10. Following the October 5, 2011 payment, plaintiff made 11 additional monthly

3   -  OPINION AND ORDER

payments, each for $1533.03. Id. at ¶ 11. However, defendant claims that escrow payments were due for each month of the 2011-2012 tax year, ending on June 1, 2012, to account for the property taxes paid by defendant. As a result, defendant deemed plaintiff's payments insufficient, and applied a portion of each payment to the payment for the previous month. Id. at ¶ 12-13. This caused plaintiff's unpaid balance to increase each month after September 2011. Id. at ¶ 14. Defendant notified plaintiff of these past due payments. Woods Compl. 11. However, defendant did not provide plaintiff's attorney with notice of plaintiff's defaults. Hemphill Decl. ¶ 8.

Plaintiff wrote a letter dated November 14, 2011 to defendant, stating that the correct monthly payment for her loan was set at $1533.03 and requesting that defendant correct her account to reflect this amount. Woods Dep. Ex. 15 at 119. Plaintiff's attorney sent defendant a second letter dated March 19, 2012, requesting explanations and corrective actions by defendant with respect to the loan. Woods Dep. Ex. 16 at 120-123. Defendant responded in a letter dated June 8, 2012, providing some of the requested explanations and informing plaintiff's attorney that none of the requested corrective actions would be taken. Woods Dep. Ex. 17 at 124-126. Plaintiff's attorney then sent another letter to defendant, dated November 28, 2012, again requesting that corrective actions be taken. Woods Dep. Ex. 18 at 127-128.

4    -    OPINION AND ORDER

On September 6, 2012, plaintiff obtained a property tax exemption for the 2012-2013 tax year on the basis that the property was used for charitable purposes. Woods Dep. Ex. 19 at 129. The exception did not cover the 2011-2012 tax year. Id. Defendant claims that it did not charge escrow for taxes after October 2012 due to the exception. Def.'s Mem. in Supp. of Mot. for Summ. J. 14.

In a letter dated January 10, 2013, defendant informed plaintiff's attorney that plaintiff's loan was "in foreclosure." Woods Dep. Ex. 14 at 115. On March 18, 2013, plaintiff filed suit.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law on an issue determines the materiality of a fact. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). A factual dispute is genuine if the evidence is such that a reasonable jury could determine the issue in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must go beyond the pleadings and identify facts

which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

III. DISCUSSION

A. RESPA Claims

Plaintiff's first claim alleges that defendant violated RESPA by failing to adequately respond to plaintiff's qualified written requests ("QWRs") for information and corrective actions on her loan, see 12 U.S.C. § 2605(e), and that defendant engaged in a pattern or practice of noncompliance with RESPA. See 12 U.S.C. § 2605(f)(1)(a). Defendant argues that both counts fail as a matter of law. I agree.

RESPA requires the servicer of a federally regulated mortgage loan to provide borrowers with a timely written response to a QWR. 12 U.S.C. § 2605. A QWR is a written correspondence that includes "the name and account of the borrower" and "a statement of the reasons . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). If the servicer fails to adequately respond to a QWR, RESPA entitles the borrower to recover

6   -   OPINION AND ORDER

actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $2,000. 12 U.S.C. § 2605(f).

Defendant moves for summary judgment on the grounds that RESPA does not apply to plaintiff's loan because plaintiff obtained the property for a "business purpose." See 12 U.S.C. § 2606(a)(1). Plaintiff argues that because the property was used for a nonprofit corporation, the RESPA business purpose exception does not apply.

RESPA "does not apply to credit transactions involving extensions of credit . . . primarily for business, commercial, or agricultural purposes." 12 U.S.C. § 2606(a). RESPA's implementing regulations define a "business purpose loan" as:

> An extension of credit primarily for a business, commercial, or agricultural purpose, as defined by Regulation Z, 12 C.F.R. 226.3(a)(1). Persons may rely on Regulation Z in determining whether the exemption applies.

24 C.F.R. § 3500.5(b)(2). Regulation Z, 12 C.F.R. § 226.1 et seq., was issued by the Federal Reserve Board "to implement the federal Truth in Lending Act" ("TILA"). 12 C.F.R. § 226.1. The referenced provision of Regulation Z simply states that the regulation does not apply to "[a]n extension of credit primarily for a business, commercial or agricultural purpose," 12 C.F.R. § 226.3; however, the Official Staff Commentary on Regulation Z provides further guidance. See 12 C.F.R. Pt. 226, Supp. I. The Ninth Circuit has held that these official staff interpretations of Regulation Z are

7   -   OPINION AND ORDER

controlling in determining whether a loan falls under the RESPA "business purpose" exception. <u>Johnson v. Wells Fargo Home Mortgage, Inc.</u>, 635 F.3d 401, 417 (9th Cir. 2011); <u>see also</u> <u>Ford Motor Credit Co. v. Milhollin</u>, 444 U.S. 555, 565 (1980) (Federal Reserve Board staff opinions interpreting TILA and its regulations are controlling "[u]nless demonstrably irrational").

Comment 3(a)(4) of the Official Staff Commentary on Regulation Z provides: "[c]redit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes." 12 C.F.R. Pt. 226, Supp. I, Cmt. 3(a)(4). Plaintiff does not dispute that the property is a non-owner-occupied rental property. Mem. in Supp. of Pl.'s Resp. to Def.'s Mot. for Summ. J. 11-13. Instead, plaintiff argues that because the loan was a refinance loan on a property she already owned, the purpose of obtaining the credit was not to "acquire, improve, or maintain" the property, and Comment 3(a)(4) does not apply. However, as defendant notes, a refinance loan used to pay off existing debt may be characterized as an acquisition loan. <u>See</u> <u>Bergman v. Fid. Nat. Fin., Inc.</u>, 2012 WL 6013040 (C.D. Cal. Dec. 3, 2012). Furthermore, the refinance loan allowed plaintiff to maintain the property.

Plaintiff also argues that the "business purpose" exception does not apply to loans obtained for charitable purposes. However, plaintiff cites no cases in which a court has held that RESPA

applies to a non-owner occupied rental property. Plaintiff leased the property to HOHM and collected monthly rent. Woods Dep. 59:5-20. Although plaintiff did not profit from the lease, id., the property meets the Official Staff Commentary definition of "non-owner-occupied rental property." 12 C.F.R. Pt. 226, Supp. I, Cmt. 3(a)(4). Therefore, plaintiff's refinance loan was a "business purpose loan" exempt from RESPA, and her RESPA claims fail as a matter of law.[1]

## B. Breach of Contract Claims

Plaintiff's second claim alleges breach of contract on four separate counts. Defendant argues that the contract claims fail as a matter of law because plaintiff materially breached the parties' agreement by failing to make full or timely monthly payments. I reject this argument.

Under Oregon law, "[a] breach is material if it goes to the very substance of the contract and defeats the object of the parties entering into the contract." Bisio v. Madenwald, 33 Or. App. 325, 331 (1978). "[I]f a written contract between the parties expressly allows for a particular remedy by one of the parties, in the face of a specified breach, the parties' objectively 'reasonable expectations' under the contract include the invocation

---

[1] Because RESPA does not apply to the loan, it is unnecessary to determine whether plaintiff's three letters were QWRs and whether defendant adequately responded to those inquiries.

9    -   OPINION AND ORDER

of that remedy in the face of that breach." <u>Uptown Heights Associates Ltd. P'ship v. Seafirst Corp.</u>, 320 Or. 638, 645 ( 1995).

Here, the stipulation specifically sets forth defendant's remedies in the event of a late or insufficient payment by plaintiff. First, defendant must provide written notice via certified mail to plaintiff and her attorney. Woods Compl. Ex. A at 3:19-28. Plaintiff is charged a fee of $100.00 for each default letter. <u>Id.</u> at 4:5-7. Plaintiff then has 30 days from the date of notice to cure the default. <u>Id.</u> If plaintiff does not cure the default within 30 days, defendant may initiate foreclosure proceedings. <u>Id.</u> at 3:22-28. If the court accepted defendant's argument that defendant was absolved of its obligation to provide notice upon plaintiff's first late payment, these remedies would be extraneous. This was clearly not the parties' intent in drafting the stipulation. Therefore, plaintiff's alleged failure to make full or timely monthly payments did not excuse defendant's obligations under the agreement.

Defendant next claims that even if plaintiff was not in material breach, plaintiff's four counts of breach of contract fail as a matter of law. I find that plaintiff's claims raise genuine issues of material fact, and accordingly deny summary judgment.

### 1. Failure to Apply Funds

Plaintiff alleges in Count I that defendant breached the stipulation by failing to apply funds paid by plaintiff to the loan

account, resulting in late fees. Defendant acknowledges that "[p]laintiff's payments were temporarily put in 'suspense' until Wells Fargo could determine how to apply them." Def.'s Mem. in Supp. of Mot. for Summ. J. 31. However, the Deed of Trust requires defendant to apply all of plaintiff's payments to fees, escrow, interest, and principal due on the loan. Woods Dep. Ex. 6 at 80-81 ¶ 3. The loan agreement does not address when defendant may place funds in "suspense," id., and the stipulation did not modify this provision. Woods Compl. Ex. A at 3:19-28. Therefore, plaintiff presents a genuine issue of material fact as to whether defendant's placement of her payments in "suspense" violated the terms of the loan agreement.

### 2. Failure to Supply Notice of Default

In Count II, plaintiff argues that defendant breached the stipulation by failing to provide notice of default to plaintiff's attorney. The stipulation requires that "in the event of any future default" by plaintiff, "[defendant] shall provide written notice via certified mail to [plaintiff and her attorney]." Id. Defendant sent notice of default to plaintiff several times. Woods Compl. 11. However, defendant failed to provide notice to plaintiff's attorney when plaintiff allegedly defaulted on the terms of the stipulation by making late and insufficient payments. Def.'s Mem. in Supp. of Mot. for Summ. J. 31-32.

Defendant does not dispute that it did not provide notice to

11  -  OPINION AND ORDER

plaintiff's attorney. Id. Instead, defendant claims that it was not yet required by the stipulation to provide notice because "it had not formally initiated foreclosure proceedings against the Property." Id. However, the stipulation requires defendant to provide notice to plaintiff and her attorney "[i]n the event of *any* future default," Woods Compl. Ex. A at 3:19 (emphasis added), including a late payment or a failure to include escrow in a monthly payment. See id. at 3:10-16. Defendant failed to meet this requirement. Accordingly, summary judgment on Count II is denied.

### 3. Breach of Good Faith

Count III alleges that defendant breached the covenant of good faith and fair dealing. Every contract contains an implied duty of good faith. See, e.g., Uptown Heights, 320 Or. at 645. That duty "is to be applied in a manner that will effectuate the reasonable contractual expectations of the parties." Pac. First Bank v. New Morgan Park Corp., 319 Or. 342, 360 (1994). "Whether a bank acts in good faith is generally a question for the jury, unless only one inference from the evidence is possible." First Interstate Bank of Oregon, N.A. v. Wilkerson, 128 Or. App. 328, 334 (1994) (emphasis omitted) (citations omitted). In pleading Count III, plaintiff merely reasserts her allegations from Counts I and II, and does not provide any additional facts to support the argument that defendant violated good faith. However, as noted above, a reasonable jury could find that defendant failed to act in accordance with

plaintiff's reasonable expectations as to the loan agreement. If a jury finds that defendant breached one or more terms of the parties' agreement, it might also find that defendant breached the covenant of good faith. Therefore, summary judgment is denied on Count III.

### 4. Breach of Agreement to Comply With RESPA

Finally, in Count IV, plaintiff claims that defendant contractually agreed to comply with RESPA and breached that agreement. Parties can incorporate federal statutes into a contract. See Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc., 116 F.3d 1095 (5th Cir. 1997) ("[p]arties to contract who are not subject to statute may choose to use parts of statute to define their relationship without bringing full force of statute to bear"); Guerini Stone Co. v. P. J. Carlin Construction Co., 240 U.S. 264, 277 (1916) ("a reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified"); see also Williston on Contracts § 30:19 (4th ed.).

The Deed of Trust specifically mentions RESPA twice:

> Lender may, at any time, collect and hold funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974.

> \*\*\*

> If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender

the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Woods Dep. Ex. 6 at 80 ¶ 2(B).[2] In these paragraphs, defendant agreed to adhere to the escrow limitations set forth in RESPA, 12 U.S.C. § 2609, and the parties agreed that plaintiff would correct deficiencies in accordance with RESPA.[3]

The stipulation supersedes the Deed's second reference to RESPA, providing new notification and timing requirements to occur in the event of any default by plaintiff. Woods Compl. Ex. A at 3:19-28. However, the stipulation does not address the Deed provision requiring defendant to adhere to RESPA's escrow account limitations. The stipulation states that "[e]xcept as otherwise provided herein, all remaining terms of the Note and Deed of Trust shall govern the treatment of Creditor's Secured Claim." Woods Compl. Ex. A at 3:17-18. Therefore, the parties' contract includes

---

[2] To the extent that plaintiff argues that these references render RESPA applicable to her loan in its entirety, I reject that argument. The Deed of Trust makes clear that only the referenced provisions of RESPA apply to her loan.

[3] Defendant argues that the sections of the Deed referring to RESPA are not part of the parties' contract. Def.'s Reply in Supp. of Mot. for Summ. J. 12-13. However, the section of the Deed that mentions RESPA is entitled "COVENANTS" and states at the top: "I promise and I agree with Lender as follows." Woods Dep. Ex. 6. The last page of the form states: "BY SIGNING BELOW, I accept and agree to the promises and agreements contained in the Security Instrument". Id. at 88. Plaintiff signed and notarized the form. Id. Based on the language of the form, it is apparent that ¶ 2(B) is a part of the loan agreement between plaintiff and defendant.

14   -   OPINION AND ORDER

an agreement by defendant to comply with § 2609 for purposes of escrow collections and withholdings.

In imposing limits on escrow collections, § 2609 also provides: "in the event the lender determines there will be or is a deficiency[,] he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency." 12 U.S.C. § 2609(a)(2). Defendant does not address whether it satisfied the contractually agreed-upon RESPA provisions, and therefore fails to establish the absence of a genuine issue of material fact. Accordingly, summary judgment on Count IV is denied.

### CONCLUSION

Plaintiff's RESPA claims fail as a matter of law. Therefore, defendants' motion for summary judgment (doc. 16) is GRANTED in part, and plaintiff's First Claim for Relief, Counts I and II, is DISMISSED. Defendant's motion is otherwise DENIED.

Dated this 28th day of January, 2014.

Ann Aiken
United States District Judge